IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 64 DOGS,<br><br>Defendants. | Case No. 4:16-cv-04074-SLD |

ORDER

Before the Court is the United States of America's motion for an order of disposition of two pit-bull type dogs seized pursuant to federal search warrants by the United States Marshals in April 2016.  Mot. Order Disposition 1, ECF No. 27.  The United States seeks authorization to euthanize the dogs pursuant to 7 U.S.C. § 2156(f) of the Animal Welfare Act.  For the following reasons, the motion is GRANTED.

BACKGROUND

On April 14, 2016, the United States Marshals seized sixty four pit-bull type dogs as a result of an investigation into a dog-fighting operation, including two identified as Brownie, IL11DG03 and Taz, IL10C01.  Mot. Order Disposition ("Mot.") 2, 3–7.  Both dogs were seized from locations containing strong indicia of dog-fighting, including training devices, medications, documents, and conditions of confinement (i.e. kennels with lack of access to food and water) associated with dog-fighting, and both dogs had typical, if not conclusive, physical indicia that they had been subject to fighting.  Mot. 3–7.[1]  The dogs have remained in the custody of the

---

[1] Brownie was found locked in a crate in a basement along with six other dogs. The number of dogs and their hidden location suggests a dog-fighting operation. Mot. 3. The ASPCA found that Brownie had scarring consistent with fighting.  ASPCA Forensic Veterinary Statement 15, ECF

American Society for the Prevention of Cruelty to Animals ("ASPCA"), which has provided shelter and administered veterinary and rehabilitative care including medication and behavioral modification training.  *See* Mot. 8–11.

Terrill McDuffy, a resident where Brownie was seized, filed a claim on May 13, 2016 stating that he had not participated in any dog-fighting, and requesting that his "listed item[s]," including nine pit-bull type dogs—one of which was Brownie—be returned to him.  McDuffy's Claim, ECF No. 11.  The claim was not verified by oath or affirmation, nor was it served on the appropriate attorney for the United States.  *Id.*  McDuffy filed an answer on June 7, 2016, McDuffy's Ans. 2–3, ECF No. 22, denying all allegations in the Verified Complaint relating to him, though his answer was not served on the appropriate attorney for the United States. Mot. 6.

Demarlo McCoy, a resident where Taz was seized, filed a claim on May 17, 2016, requesting his "things back." McCoy's Claim, ECF No. 14.  Taz was one of two pit-bull type dogs seized at the location.  *Id.* at 2; Mot. 7. The claim was not verified nor was it served on the appropriate attorney for the United States.  *See id.*  McCoy did not file an answer.

Once in custody, ASPCA veterinarians assessed Brownie and found physical signs that he had been forced to fight. Mot. 8.  Over the course of several months, Brownie's disposition changed from fearfulness to aggression, and the ASPCA's Anti-Cruelty Behavior Team attempted to address his tendency to bite handlers through behavior modification, then

---

No. 27-2.  Additionally, agents seized a large variety of antiseptic wound dressings, sprays, and muscle supplements consistent with a dog fighter attempting to treat dogs' injuries at home. Mot. 4–5; McDuffy's Claim 3–4, ECF 11.  The agents also seized dog treadmills, weighted dog collars, and other commonly used training devices.  At the residence where Taz was seized, agents also found and seized antibiotics and syringes commonly used to treat wounds after fights and a "flirt pole" commonly used to entice dogs to bite and chase.  The ASPCA found injuries on Taz consistent with the somewhat limited exposure to fighting that would be expected at his young age.  Forensic Veterinary Statement 5, ECF No. 27-4.  Taz was seized along with another pit-bull type dog, both of which tested positive for a tickborne disease commonly found in fighting dogs.  Mot. 6.

medication for anxiety.  Behaviorist Euthanasia Request 1–2, ECF No. 27-5.  When these approaches did not work, Brownie's kennel was modified to limit his exposure to handlers for their safety.  *Id.* at 2.  Brownie has injured multiple ASPCA employees by biting their arms and legs. *Id.*  ASPCA officials have determined that Brownie will continue to pose a threat, and that his health and wellness will deteriorate due to the necessity to keep him confined.  *Id.*

Taz has a similar history of aggression toward other dogs and humans, and the ASPCA Field Investigations and Response Manager found that Taz was hyper-stressed, could not safely interact with humans, could not be taken safely to the exercise area or outside, could not be pet or stroked, and otherwise showed signs of "kennel stress."  Ex. D 2–3, ECF No. 27-6.  Taz has been confined to his cage with no exercise or human interaction since July 1, 2016, when he bit the arm of one of the handlers, resulting in a serious puncture wound.  Behaviorist Euthanasia Request 1.

Both dogs have bitten their human handlers to the point of injury, resulting in the ASPCA's decision to modify their cages to minimize human interaction.  *Id.*  An ASPCA official described the condition both dogs are being kept in as "essentially...solitary confinement."  *Id.*  After several months in ASPCA's care, the United States reports that both Brownie and Taz have become aggressive and agitated, pose a danger to their handlers, and have little prospect of rehabilitation.  Mot. 8–11.

## ANALYSIS

Because of the safety concerns for human handlers and the determination that it would be inhumane to keep the dogs alive in their physical and psychological states, the United States moves for an order of disposition seeking permission to euthanize Brownie and Taz pursuant to the Animal Welfare Act.  Mot. 8. The United States argues that the Act permits euthanasia when "an animal cannot be safely cared for and the animal's quality of life is so poor that maintaining

3

the animal any longer would be inhumane." Mot. 7–8. Lastly, the Government argues McDuffy and McCoy have not complied with Rule G(5)(a) of the Supplemental Rules of Civil Procedure applicable to forfeiture claims and therefore do not have standing to contest a forfeiture or order of disposition. Mot. 6–7.

The Animal Welfare Act makes it illegal "to knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture." 7 U.S.C. § 2156(b). "[A]ny animal which there is probable cause to believe was involved in any violation of this section" may be seized by the United States and "shall be liable to be proceeded against and forfeited to the United States." *Id.* § 2156(f). The Act provides that "[n]ecessary care including veterinary treatment shall be provided while the animals are . . .held in custody." *Id.*

The Court finds that the dogs are living in wretched conditions without any hope for a brighter future. Accordingly, it would be inhumane to allow the dogs to continue suffering. Based on the clear psychological distress and physical discomfort experienced by these two dogs, the Court finds that euthanasia falls within the "necessary care" that a veterinarian—such as one of the many who have examined and attempted to treat these two dogs—may provide.

Further, neither of the claims made on each of the two dogs—McDuffy's on Brownie nor McCoy's on Taz—comply with Supplemental Admiralty and Maritime Rule G, which delineates the procedure governing forfeiture actions in rem. Supplemental Admiralty and Maritime Claims Rule G(5). A party asserting an interest in seized property must file a verified claim, identifying the property and the claimant's interest, and serve it on the United States. *Id*. at G(5)(a)(i). A claimant who fails to meet the aforementioned requirements lacks standing to contest the forfeiture. *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*,

4

219 F.3d 595, 598 (7th Cir. 2000). Claimaints must also file and serve "an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supplemental Admiralty and Maritime Claims Rule G(5)(b).

Neither McDuffy nor McCoy verified their claims by oath or affirmation. In the Seventh Circuit, verification of a claim is an "essential element of any claim" and failure to observe the requirement essentially dooms the claimant's ability to contest the forfeiture. *Saul Stone & Co.*, 219 F.3d at 597 (quoting *United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 559 (7th Cir. 1988)); *see $239,400*, 795 F.3d at 643. Neither McDuffy nor McCoy attempted to properly serve their claims on the government. *See $239,400*, 795 F.3d at 644. Additionally, the docket shows that McCoy failed to file an answer at all. Considering these procedural failures, McDuffy and McCoy have no standing to contest the government's disposition of the property.

The Court finds that Brownie and Taz are experiencing an extremely reduced quality of life, despite the extensive medical and behavioral rehabilitative efforts of the ASPCA, and that they have become so aggressive as to be unsafe for human interaction. The only claims filed on each of the dogs are procedurally deficient such that neither claimant has met the requirements for procedural standing, and therefore could not be successful in any future claims to the animals. The humane and procedurally sound choice is to permit the U.S. Marshals to authorize the ASPCA to euthanize Brownie and Taz.

## CONCLUSION

The United States' Motion for Order of Disposition, ECF No. 27, is GRANTED.

Entered December 2, 2016

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE